UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| GLAXOSMITHKLINE BIOLOGICALS, S.A., | : | |
| | : | |
| Plaintiff, | : | No. 13 Civ. 1395 (PKC) |
| | : | ECF Case |
| -against- | : | |
| | : | |
| HOSPIRA WORLDWIDE, INC. and | : | REPLY MEMORANDUM OF LAW |
| HOSPIRA, INC., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**DEFENDANTS' REPLY MEMORANDUM OF LAW
IN SUPPORT OF THEIR COMBINED MOTION TO
TRANSFER THIS ACTION TO THE NORTHERN DISTRICT
OF ILLINOIS OR, IN THE ALTERNATIVE, TO DISMISS**

TABET DIVITO & ROTHSTEIN LLC
209 South LaSalle Street, 7th Floor
Chicago, IL  60604
Telephone:  (312) 762-9450
Facsimile:  (312) 762-9451

*Attorneys for Defendants Hospira
Worldwide, Inc. and Hospira, Inc.*

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................... 1

ARGUMENT ......................................................................................................................... 1

I.   THE COURT SHOULD TRANSFER THIS ACTION TO THE NORTHERN
     DISTRICT OF ILLINOIS ............................................................................................ 1

     A.   The Non-Party Witnesses Are All Located in Illinois. ...................................... 2

     B.   The Northern District of Illinois Is More Convenient for the Party Witnesses. .............. 4

          1.   Defendants' Illinois-based witnesses. ....................................................... 4

          2.   Defendants' non-Illinois based witnesses. ................................................ 5

          3.   GSK's Belgium-based witnesses. .............................................................. 5

     C.   Illinois Is Where Substantial Events Giving Rise to GSK's Claims Occurred. .............. 6

     D.   Illinois Is Where Most of Defendants' Documents Related to This Dispute Are
          Located ........................................................................................................... 7

     E.   GSK's Choice of Forum Is Not Entitled to Substantial Deference. ................... 7

II.  IN THE ALTERNATIVE, THE COURT SHOULD DISMISS THE COMPLAINT. ........... 9

CONCLUSION ..................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Accantia Grp. Holdings v. Food Market Merch.*, No. 12 Civ. 5042 (VM), 2012 WL
6135083 (S.D.N.Y. Nov. 30, 2012) ........................................................................ 3

*Coface v. Optique Du Monde, Ltd.*, 521 F. Supp. 500 (S.D.N.Y. 1980) ........................................ 9

*Emblaze Ltd. v. Apple, Inc.*, No. 10 Civ. 5713 (PKC), 2011 U.S. Dist. LEXIS 21082
(S.D.N.Y. Feb. 24, 2011) ........................................................................................ 8

*Eres N.V. v. Citgo Asphalt Refining Co.*, 605 F. Supp. 2d 473 (S.D.N.Y. 2009) ......................... 3

*France Telecom S.A. v. Marvell Semiconductor, Inc.*, No. 12 Civ. 4986 (JSR), 2012
U.S. Dist. LEXIS 184095 (S.D.N.Y. Dec. 28, 2012).. ............................................ 6

*Medien Patent Verwaltung AG v. Warner Bros. Entertainment, Inc.*, 749 F. Supp.
188 (S.D.N.Y. 2010) ............................................................................................... 8

*National Union Fire Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 12 Civ. 1250
(PKC) (RCE), 2012 Dist. LEXIS 70206 (S.D.N.Y. May 11, 2012) .............................. 2, 4, 7

*Pergo, Inc. v. Alloc, Inc.*, 262 F. Supp. 2d 122 (S.D.N.Y. 2003) ................................................ 5, 6

*Royal Ins. Co. of Am. V. United States,* 998 F. Supp. 351 (S.D.N.Y. 1998) ................................ 4

*Savoy Owners Assocs., Inc. v. Ins. Corp. of New York*, No. 02 Civ. 6145 (JFK),
2003 U.S. Dist. LEXIS 3317 (S.D.N.Y. Mar. 6, 2003) ........................................... 3

## INTRODUCTION

All of the factors courts consider in adjudicating a transfer request overwhelmingly favor transfer of this lawsuit to the Northern District of Illinois. Try as it might, GlaxoSmithKline Biologicals S.A. ("GSK") has failed to come up with even one legitimate connection between this dispute and the Southern District of New York and now concedes that New York is not the locus of operative facts. Instead, GSK seeks to prevent transfer by making dubious arguments about defendants' potential witnesses, the connection this dispute has to Kansas, the convenience of its Belgium-based witnesses and its New York and Pennsylvania-based lawyers, and the Agreement's choice of law provision.

Courts in the District, including this Court, have considered arguments similar to the ones GSK raises here and have rejected them as a basis to deny a transfer request. Because there is no connection whatsoever between this action and New York, and because there are significant, meaningful connections between the underlying events and Illinois, this Court should grant defendants' request to transfer this case to the Northern District of Illinois. In the alternative, the complaint should be dismissed because of its pleading defects.

## ARGUMENT

I.    **THE COURT SHOULD TRANSFER THIS ACTION TO THE NORTHERN DISTRICT OF ILLINOIS.**

GSK's opposition confirms the lack of any connection between New York and the facts and circumstances giving rise to this dispute (*i.e.*, no witnesses are here, no parties reside here, no operative facts occurred here, and no documents are located here). GSK insists, however, that this lawsuit should stay in this District for four reasons: (a) there are too few Illinois-based material non-party and party witnesses to warrant transfer; (b) Kansas, rather than New York or Illinois, is more closely connected to the events giving rise to this lawsuit; (c) the Southern

District of New York is more convenient for GSK's Belgium-based employees and its lawyers; and (d) New York law governs this dispute. Each unavailing, defendants nevertheless address GSK's arguments below.

### A.      The Non-Party Witnesses Are All Located in Illinois.

As set forth in defendants' opening brief, and as this Court has held, the starting point in the transfer analysis is the convenience of the witnesses, with courts typically according more weight to the convenience of the non-party witnesses than that of the party witnesses. (Defendants' Opening Memorandum ("Defs' Mem.") at 13, n.3 (citing, *inter alia*, *National Union Fire Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 12 Civ. 1250 (PKC) (RCE), 2012 Dist. LEXIS 70206, at *9 (S.D.N.Y. May 11, 2012).) Courts typically give the location of the non-party witnesses greater weight because live testimony is far-preferred over deposition testimony and non-party witnesses can only be compelled to appear if they reside within the subpoena power of the court. *See id.*

In its opposition brief, GSK does not identify a single non-party witness who lives in New York. As for the three non-party witnesses defendants identified who live in Illinois and are within the Northern District of Illinois' subpoena power – Messrs. Cacich, Isaza and Vogt – GSK quarrels with the significance of two of them, but concedes (albeit reluctantly) that Cacich "appears to be a material witness."[1]  (GSK's Opposition Brief ("GSK Br.") at 12.)

GSK understates Mr. Cacich's role in the events leading up to the filing of this lawsuit. Cacich is arguably one of the most important witnesses in this dispute. After all, he negotiated and signed the parties' Agreement, he had overall responsibility for the vaccine project for

---

[1]  GSK claims that Isaza and Vogt are not relevant because its declarant "has never heard of the other two." (GSK Br. at 12.) Mr. Chevallier's conclusory statements are of little value. He did not attend the GSK-Hospira Worldwide March 1, 2011 meeting in Illinois at which Isaza and Vogt were present. Nor does it appear from the Chevallier declaration that he was directly involved in the engineering and manufacturing issues Isaza and Vogt oversaw for Hospira Worldwide.

Hospira Worldwide, he helped negotiate the transition from the TIV vaccine to the QIV vaccine, and, according to GSK, he was the one who allegedly communicated Hospira Worldwide's purported decision to "unilaterally terminate[] the contract." (Defs' Mem. at 7 and Ex. A at ¶¶ 9, 10, 14, 15 17, 20, 28; GSK Br. at 10.)  Thus, his testimony will be critical to one of the central issues in the case: whether GSK justifiably terminated the Agreement based on Hospira Worldwide's purported communication in March 2012 that it was abandoning its contractual obligations.  The jury should not be deprived of hearing Mr. Cacich testify live on this and other important issues, including his post-March 22, 2012 discussions in which he repeatedly assured his GSK counterpart (Marcel Laubacher) and others at GSK of Hospira Worldwide's commitment to the project and its continued performance.

Even if Mr. Cacich's importance to this case is given its proper due, GSK nonetheless claims that his location in Illinois should have "minimal weight in the Court's analysis because there is no indication that he is unwilling to testify at trial without a subpoena." (GSK Br. at 13.) GSK also claims that "[e]ven if Mr. Cacich were unwilling to testify, testimony from his deposition . . . could be used as an acceptable alternative in lieu of live testimony at trial." (*Id.*) GSK misunderstands the law and ignores this Court's decisions directly on point.

***First***, the law does not require the movant to offer evidence that a third party is unwilling to testify at trial without a subpoena.[2] *See Savoy Owners Assocs., Inc. v. Ins. Corp. of New York*, No. 02 Civ. 6145 (JFK), 2003 U.S. Dist. LEXIS 3317, at **5-6 (S.D.N.Y. Mar. 6, 2003) (lack of subpoena power makes convenience of witnesses an important factor; party seeking transfer not

---

[2]  GSK's reliance on *Eres N.V. v. Citgo Asphalt Refining Co.*, 605 F. Supp. 2d 473, 482, 484 (S.D.N.Y. 2009), among other cases, is misplaced. (GSK Br. at 13.)  Not only did the Court in *Eres* grant the motion to transfer the case from New York to Texas, but in that case the Court addressed the willingness of the parties' witnesses (as opposed to the third party witnesses) to voluntarily testify at trial. *See also Accantia Grp. Holdings v. Food Market Merch.*, No. 12 Civ. 5042 (VM), 2012 WL 6135083 (S.D.N.Y. Nov. 30, 2012) (relying on *Eres;* refusing transfer, "most importantly," because of the "material connection. . .between the forum state and the underlying events.").

required to proffer evidence of a witness's unwillingness to testify). Indeed, as witnesses are prone to changing their minds, what Cacich, Isaza or Vogt may say today may be far different from what they are willing to do several years from now, when the case is likely to be tried. This is why courts routinely transfer cases to venues where the important third party witnesses are located and why this lawsuit should be transferred to Illinois, as a transfer is the only way to ensure Cacich, Isaza and Vogt's appearance at trial.

**Second**, courts, including this Court, have firmly rejected GSK's suggestion that deposition testimony is "an acceptable alternative in lieu of live testimony at trial." (GSK Br. at 13.) As this Court has held in granting a motion to transfer, "[d]epositions . . . even when videotaped, are generally no substitute for live testimony." *National Union*, 2012 U.S. Dist LEXIS 70206, at *9; *see also Royal Ins. Co. of Am. V. United States,* 998 F. Supp. 351, 354-55 (S.D.N.Y. 1998) (videotaped deposition testimony is a "poor substitute for live testimony"). This case is no exception.

### B.   The Northern District of Illinois Is More Convenient for the Party Witnesses.

#### 1.   Defendants' Illinois-based witnesses.

GSK does not dispute that all eight of Hospira Worldwide's senior executives involved in the vaccine project live in Illinois. Rather, GSK claims simply that just two of them, Messrs. Tran and Larsen, had significant involvement in the project. As for the other six, GSK maintains that their involvement in the project was too insignificant to matter. (GSK Br. at 11.)

GSK's claims about Orfan, Farmer, Meredith, Rivas, Ertmann and Porter are directly contradicted by Mr. Tran's declaration, which details the important roles these employees played in the project. (*See generally* Defs' Mem. at Ex. A (Tran Decl.) and Ex. 2 thereto (list of potential witnesses).) To give just one example, one of the potential witnesses GSK downplays, Kevin Orfan, regularly communicated with Patrice Lemonnier (Mr. Chevallier's boss) and others

4

at GSK regarding, among other things, the transition from TIV to QIV, the QIV schedule and progress related thereto, and GSK's termination decision. (Defs' Mem. at Ex. A, ¶ 35; Ex. 2.)

In any event, whether two witnesses, eight witnesses, or some number in between, there can be no dispute that Illinois is the more convenient forum for Hospira Worldwide's senior executives, all of whom live in Illinois and none of whom lives in New York.

### 2.    Defendants' non-Illinois based witnesses.

The bulk of defendants' non-Illinois-based employees who worked on the project and may be material witnesses live in Kansas and none of them live in New York. (Defs' Mem. at Ex. A, at Ex. 2.)  GSK does not dispute that Chicago is the more convenient forum for them. (GSK Br. at 12; *see also* Defs' Mem. at Exs. C and D.)  Rather, GSK claims that the convenience for these five potential witnesses is entirely irrelevant: "The convenience of witnesses who reside in neither the current nor the transferee forum is not relevant when considering a motion to transfer venue." (GSK Br. at 12 (citation omitted).)

As set forth in their opening brief, defendants maintain that the Court can consider the convenience of the Kansas-based witnesses and this factor also favors transfer. (Defs' Mem. at 12-14.)  However, if GSK is correct that the Court should not consider the convenience to the Kansas-based witnesses, then the Court should also not consider the convenience to the Belgium-based GSK witnesses, upon which GSK places great weight in opposing this transfer request. *See, e.g.*, *Eres*, 605 F. Supp. 2d at 480 (refusing to weigh the convenience of any Eres witnesses living in Antwerp, Belgium).  Even if the Court does not consider the convenience of these witnesses, the balance of the other transfer factors still favors transfer to Illinois.

### 3.    GSK's Belgium-based witnesses.

If, on the other hand, GSK is incorrect, and the convenience of the Belgium-based witnesses is relevant, then it is clear from GSK's opposition that there is no material difference

between New York and Chicago.  There are direct flights from Brussels to both cities.  The fact that New York has a few more flights and the travel time from Brussels to New York is slightly less (25 minutes) is of no meaningful significance.  *See Pergo, Inc. v. Alloc, Inc.*, 262 F. Supp. 2d 122, 130 (S.D.N.Y. 2003) (marginal differences in flight times is not sufficient to deny transfer); *see also France Telecom S.A. v. Marvell Semiconductor, Inc.*, No. 12 Civ. 4986 (JSR), 2012 U.S. Dist. LEXIS 184095, at *7 (S.D.N.Y. Dec. 28, 2012) (San Francisco, at worst, only marginally less convenient than New York for French plaintiff).  To the contrary, as courts in this district have held, GSK's Belgium-based witnesses will be inconvenienced wherever the case is tried and Chicago is no more inconvenient for them than New York.  (Defs' Mem. at 15 (citing cases).)  The convenience of GSK's Belgium-based witnesses thus does not constitute a basis to deny the motion to transfer.  *Pergo*, 262 F. Supp. 2d at 130.

C.     **Illinois Is Where Substantial Events Giving Rise to GSK's Claims Occurred.**

GSK does not dispute any of the facts in Mr. Tran's declaration regarding the close connection between Illinois and the events at issue here.  Nevertheless, GSK claims that Kansas trumps Illinois because Kansas is where "all of the most important events in the United States" occurred.  (GSK Br. at 9.)

GSK's current position is an about-face from the position it took in its March 27, 2013 letter to the Court.  (Defs' Mem. at Ex. E.)  In that letter, unlike now, GSK claimed that New York was the "locus of operative facts" based on its future distribution plans for the vaccine.  (Defs' Mem. at Ex. E at 2.)  GSK's change in position is an admission that the locus of operative facts is not centered in New York, thus further supporting a transfer.

As for the Kansas connection, there is no dispute that relevant events took place there.  (*E.g.*, Defs' Mem. at 3, 9-10.)  But that is beside the point.  The fact that events also took place in Kansas does not diminish the meaningful relationship that Illinois has to this dispute, as even

6

GSK admits in its brief. (GSK Br. at 10 (conceding that Kansas may not be "the exclusive locus of operative facts").) This case's meaningful relationship to Illinois is more than enough to warrant a transfer to the Northern District of Illinois. *See, e.g., France Telecom S.A.*, 2012 U.S. Dist. LEXIS 184095, at *4 (transferring case from New York to California because, while operative facts occurred in several different locales in the United States and elsewhere, California was the locus of many of the operative facts).

### D.     Illinois Is Where Most of Defendants' Documents Related to This Dispute Are Located.

GSK does not dispute that the bulk of defendants' documents related to this dispute are located in Illinois and that no documents are housed in New York. Rather, GSK claims that the location of the evidence is of no significance because the documents are "available electronically and are accessible from any location." (GSK Br. at 14-15.) GSK's position is without merit.

As defendants set forth in their opening brief, it is well settled that the location of relevant documents is one of the factors courts consider in the transfer analysis. (Defs' Mem. at 12-13.) Indeed, in granting a transfer motion, this Court rejected an argument similar to the one GSK makes here: that the ease with which the relevant documents could be transported militated against a transfer. *National Union*, 2012 U.S. Dist. LEXIS 70206, at **11-12 (while documents can be transported, the fact the documents are currently located in transferee district favors transfer). Because most of defendants' documents are located in Illinois, and no documents are in New York (Defs' Mem. at Ex. A, ¶¶ 43-46), this factor, too, favors a transfer to Illinois.

### E.     GSK's Choice of Forum Is Not Entitled to Substantial Deference.

GSK argues that the motion to transfer should be denied because its choice of forum should be given "great weight" and is entitled to "substantial deference." (GSK Br. at 5-7.) GSK claims its forum choice should be given deference because New York is more convenient

for its Belgium-based witnesses, its in-house legal team and its external counsel, and because New York law governs this dispute. (*Id.* at 6.)

In advocating its position, GSK turns a blind eye to those decisions, including the decisions of this Court, that reject GSK's thinking. As this Court has held repeatedly, the deference courts customarily accord to a plaintiff's choice of forum is significantly diminished or eliminated entirely in instances where the operative facts have few meaningful connections to plaintiff's choice of forum or when the plaintiff does not reside in that forum. (Defs' Mem. at 17-18 (citing cases).) Indeed, as this Court held in *Emblaze Ltd. v. Apple, Inc.*, No. 10 Civ. 5713 (PKC), 2011 U.S. Dist. LEXIS 21082, at *5 (S.D.N.Y. Feb. 24, 2011), "a plaintiff's choice of forum is given deference because it is presumed to be convenient but it is generally less likely that the choice was made for convenience when, as here, a foreign plaintiff chooses a forum in the United States." *See also Medien Patent Verwaltung AG v. Warner Bros. Entertainment, Inc.*, 749 F. Supp. 2d 188, 191 (S.D.N.Y. 2010) (relied on by GSK; noting that "in many cases, a foreign plaintiff's chosen forum in the United States will not be any more discernibly convenient than the alternatives and, as a result, will not merit a presumption to the contrary.")

These well-established principles apply with full force here. ***First***, the operative facts have no connection, let alone a "few meaningful connections," to GSK's chosen New York forum. ***Second***, GSK does not reside in this forum. ***Third***, GSK's forum choice is not entitled to a presumption of convenience because it is a foreign corporation, this lawsuit has no meaningful connection to New York, and New York is not any more discernibly convenient than Illinois.

Finally, GSK's reliance on the choice of law provision and the convenience of New York for its lawyers is entirely misplaced. As to the former, the choice of law provision is of little significance to the transfer analysis because: (a) federal courts are deemed capable of applying

the substantive laws of another state; and (b) this case is nothing more than a garden-variety contract dispute that does not require a New York court's highly specialized knowledge of New York law. (Defs' Mem. at 18-19 (citing cases)); *see also Coface v. Optique Du Monde, Ltd.*, 521 F. Supp. 500, 511 (S.D.N.Y. 1980) ("[P]laintiff's assertion that this Court is better able to apply New York law than the federal court sitting in Chicago is unrealistically provincial."). As to the latter, the convenience of counsel is simply not a proper consideration in the transfer analysis. (Defs' Mem. at 12 and 19, n.4.)

## II.   IN THE ALTERNATIVE, THE COURT SHOULD DISMISS THE COMPLAINT.

Alternatively, the Court should dismiss the Complaint.   The Count I claim against Hospira, Inc. should be dismissed because: (a) Hospira, Inc. is not a signatory to the Agreement; and (b) GSK has failed to properly plead the elements necessary to pierce the corporate veil. (Defs' Mem. at 20-22.)  As for the quasi-contractual claims (Counts II and III), they should be dismissed as against Hospira, Inc. and Hospira Worldwide because they are not alleged in the alternative to GSK's breach of contract claim (Count I).

GSK's argument to save Count I – that Hospira, Inc. is actually a party to the Agreement – is belied by the Agreement itself, which states on its face that it is between GSK and Hospira Worldwide.   Indeed, GSK and Hospira Worldwide are the only two entities included in the Agreement's definition of "parties." (Defs' Mem. at Ex. A, at Ex. 1, pp. 5, 9.)  The fact that Mr. Cacich also worked for Hospira, Inc., or that two schedules were purportedly also signed by a Hospira, Inc. employee, does not somehow make Hospira, Inc. a contracting party.

GSK's "manifested an intent to be bound" argument is equally flawed.   It is nothing more than a thinly veiled attempt to plead around the requirements to pierce the corporate veil.   GSK's failure to properly plead the elements necessary to pierce the corporate veil also requires the dismissal of Count I as it relates to Hospira, Inc.  (Defs' Mem. at 21-22.)

Finally, Counts II and III should be dismissed because, notwithstanding GSK's protestations to the contrary, nowhere in the Complaint does it say that these claims are brought as an alternative to Count I.  This pleading defect may seem trivial, but in actuality it is very significant.  GSK admittedly abandoned the TIV vaccine in favor of QIV.  (Defs' Mem. at 4-5.) GSK terminated the QIV project while the parties were still in the midst of negotiating several essential terms.  (*Id.* at 5.)  In the event GSK pursues its quasi-contractual claims in lieu of Count I, then, like every other litigant, it should be required to allege expressly that: (a) these claims are being brought in the alternative to its breach of contract claim; and (b) these claims are cognizable only in the event that no agreement is deemed to have existed between the parties for either the TIV project (because GSK terminated TIV in November 2011) or the QIV project (because there was no final agreement on several essential terms, including price and schedule).

## CONCLUSION

For the foregoing reasons, and the reasons set forth in their opening memorandum, defendants respectfully request that the Court grant their motion to transfer or, in the alternative, to dismiss the complaint.

Dated:  May 10, 2013

TABET DIVITO & ROTHSTEIN LLC

By:   /s/ Christopher D. Liguori
     Christopher D. Liguori
     Timothy A. Hudson
     Katherine M. O'Brien

209 South LaSalle Street, 7th Floor
Chicago, Illinois  60604
Telephone:  (312) 762-9450
Facsimile:  (312) 762-9451
cliguori@tdrlawfirm.com
thudson@tdrlawfirm.com
kobrien@tdrlawfirm.com
*Attorneys for Defendants Hospira Worldwide, Inc. and Hospira, Inc.*