UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
GLAXOSMITHKLINE BIOLOGICALS, S.A.,

                         Plaintiff,

          -against-

HOSPIRA WORLDWIDE, INC. and
HOSPIRA, INC.,

                      Defendants.
-----------------------------------------------------------x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5-21-13

13 Civ. 1395 (PKC)

MEMORANDUM
AND ORDER

P. KEVIN CASTEL, District Judge:

        Plaintiff GlaxoSmithKline Biologicals, S.A. ("GSK") is a Belgian pharmaceutical company engaged in the development of human vaccines. GSK brought suit against Illinois-based defendants Hospira Worldwide, Inc., a contract pharmaceutical manufacturer, and its parent company, Hospira, Inc. (together, "Hospira"). GSK alleges that defendants breached an agreement among the parties under which defendants were to manufacture plaintiff's influenza vaccine in Kansas. Defendants now move, under 28 U.S.C. § 1404(a), to transfer the case to the United States District Court for the Northern District of Illinois. In the alternative, defendants move to dismiss the complaint in part under Rule 12(b)(6), Fed. R. Civ. P. For the reasons set forth below, defendants' motion to transfer is granted. The Court declines to reach so much of the motion as seeks dismissal of the claims.

## BACKGROUND

        Plaintiff GSK, a Belgian corporation with its principal place of business in Rixensart, Belgium, is a global healthcare company that researches and develops vaccines for distribution around the world. (Compl. ¶ 9.) Hospira, Inc., a Delaware corporation headquartered in Lake Forest, Illinois (approximately 40 miles north of Chicago), specializes in

pharmaceutical delivery products. (Tran Decl. ¶ 4.) Hospira, Inc.'s business includes the "One 2 One" contract manufacturing business, which it conducts through its wholly-owned subsidiary, Lake Forest-headquartered Hospira Worldwide, Inc. (Id. ¶ 5.)

According to the complaint, GSK and Hospira entered into a Toll Manufacturing Agreement (the "Agreement"), dated December 31, 2010, for the production and manufacture of an influenza vaccine to be sold throughout the United States. (Compl. ¶ 15.) The Agreement was to remain in force until December 31, 2015. (Id.)

Under the Agreement, GSK would supply Hospira with the raw materials for the manufacture of a vaccine. (Id. ¶ 16.) Hospira agreed to use the raw materials supplied by GSK to produce batches of the vaccine ("Validation Batches") that complied with the Agreement's quality requirements and that were otherwise acceptable to GSK in its sole discretion. (Id. ¶ 17.) Hospira agreed that all Validation Batches would be ready for regulatory filing in 2011. (Id. ¶ 19.) Hospira also agreed to manufacture the final vaccine product in compliance with the terms of the Agreement, good manufacturing practices, and a separately executed Quality Agreement (incorporated into the Agreement as a schedule). (Id. ¶¶ 17, 20.)

GSK alleges that, despite its efforts to help Hospira meet its obligations under the Agreement, Hospira breached the Agreement by failing to produce, on schedule, Validation Batches and a final vaccine product that complied with the terms of the Agreement and were acceptable to GSK. (Id. ¶¶ 21-29.) Among other things, GSK alleges that Hospira's product contained unacceptable inconsistencies, was adulterated with silicone, and did not adequately mitigate against contamination risks. (Id. ¶ 22.) GSK also alleges that, in late March and early April of 2012, with more than three years before the end of the Agreement's term, Hospira unilaterally terminated the Agreement. (Id. ¶¶ 30-32.)

DISCUSSION

Defendants seek to transfer the action to the Northern District of Illinois under 28 U.S.C. § 1404(a). Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Thus, "[d]eciding a § 1404(a) motion to transfer venue 'requires a two-part inquiry: first, whether the action to be transferred might have been brought in the transferee court; and second, whether considering the convenience of the parties and witnesses, and the interest of justice, a transfer is appropriate.'" AGCS Marine Ins. Co. v. Associated Gas & Oil Co., Ltd., 775 F. Supp. 2d 640, 645 (S.D.N.Y. 2011) (quoting Fuji Photo Film Co., Ltd. v. Lexar Media Inc., 415 F. Supp. 2d 370, 373 (S.D.N.Y. 2006)).

I. Propriety Of The Transferee Forum

As a threshold matter, venue would have been proper had this case been brought in the Northern District of Illinois in the first instance because both defendants reside in that district for venue purposes. (Tran Decl. ¶¶ 4, 5.) See 28 U.S.C. § 1391(b)(1) ("A civil action may be brought in . . . a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located . . . ."); see also 28 U.S.C. § 1391(c)(2), (d).

II. Factors Governing Transfer

The next question is whether "the convenience of parties and witnesses" and "the interest of justice" justify a transfer. 28 U.S.C. § 1404(a). "Among the factors to be considered in determining whether to grant a motion to transfer venue are, inter alia: (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of

3

operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc., 599 F.3d 102, 112 (2d Cir. 2010) (citation and quotation marks omitted). Other factors considered by district courts include "the forum's familiarity with the governing law" and "trial efficiency and the interests of justice." Everlast World's Boxing Headquarters Corp. v. Ringside, Inc., 12 Civ. 5297 (PAE), 2013 WL 788054, at *6 (S.D.N.Y. Mar. 4, 2013). The burden of demonstrating the desirability of transfer lies with the moving party, who must "make a clear and convincing showing that the balance of convenience favors [its] choice" of forum. Hubbell Inc. v. Pass & Seymour, Inc., 883 F. Supp. 955, 962 (S.D.N.Y. 1995); see New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc., 599 F.3d 102, 114 (2d Cir. 2010) (noting that it is "appropriate that the district courts in our Circuit have consistently applied the clear and convincing evidence standard in determining whether to exercise discretion to grant a transfer motion"). "District courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 106 (2d Cir. 2006).

As explained below, the Court concludes that defendants have carried their burden of demonstrating that transfer is appropriate. Although plaintiff's choice of forum would ordinarily be entitled to considerable deference, neither GSK nor the underlying facts has any meaningful connection to New York and transferring the action will significantly ease the burden of litigation on defendants while not materially increasing the burden on plaintiff. Perhaps most importantly, transferring the case will help ensure that material non-party witnesses are available to give live testimony, should the case proceed to trial.

      a.  Plaintiff's Choice Of Forum

A plaintiff's choice of forum is ordinarily accorded "great weight."  Gottdiener, 462 F.3d at 107.  Defendants argue that the Court should not pay deference to plaintiff's choice of forum because plaintiff is based in Belgium, not New York, and because the case lacks a factual connection to New York.

This Court has previously noted that the weight accorded to a plaintiff's choice of forum diminishes where the operative facts lack a meaningful connection to the chosen forum.  Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. St. Paul Fire & Marine Ins. Co., 12 Civ. 1250 (PKC), 2012 WL 1829589, at *5 (S.D.N.Y. May 11, 2012) (Castel, J.).  Here, defendants contend that Illinois is the locus of operative facts because that is where Hospira executives negotiated, administered, and made major decisions regarding the Agreement, and where Hospira executives communicated with GSK.  (Tran Decl. ¶¶ 8-23, 32.)  Plaintiff responds that McPherson, Kansas, the location of the plant where the vaccine was to be produced, is actually the locus of operative facts because that is where Hospira allegedly failed to produce a vaccine product acceptable to GSK and because GSK representatives frequently traveled to Kansas in connection with the project.  (Chevallier Decl. ¶¶ 19, 20.)  In light of the parties' submissions, it is apparent that neither Kansas nor Illinois (nor New York or Belgium) is the exclusive locus of operative facts in this case.  It does appear, however, that Illinois, unlike New York, has a meaningful connection to the underlying facts, even if there is arguably an equal or greater connection with Kansas.  The fact that New York lacks a connection to the underlying facts diminishes the weight accorded to plaintiff's choice of forum.

That said, there is no indication that GSK's choice of forum was made for any reason other than its perceived convenience.  GSK asserts that its choice was motivated by this

5

forum's familiarity with New York contract law, which governs the Agreement, and a desire to promote the convenience of GSK's witnesses and counsel.  (Chevallier Decl. ¶ 3.)  While the convenience of counsel is not of particular importance, see, e.g., Olympia Grp., Inc. v. Cooper Indus., Inc., 00 Civ. 7367 (MBM), 2001 WL 506219, at *2 (S.D.N.Y. May 14, 2001) ("the convenience of the parties' lawyers is not relevant to the decision whether to transfer"), GSK's reasons for choosing a New York forum appear legitimate, not tactical.  See Tomita Techs. USA, LLC v. Nintendo Co., Ltd., 818 F. Supp. 2d 770, 772 (S.D.N.Y. 2011) ("Legitimate reasons for choosing a forum include . . . the availability of appropriate legal assistance, and other reasons relating to convenience or expense." (citation and quotation marks omitted)); Medien Patent Verwaltung AG v. Warner Bros. Entm't, Inc., 749 F. Supp. 2d 188, 191 (S.D.N.Y. 2010) ("MPV has articulated several legitimate reasons for selecting the Southern District of New York, including the ease and expense of travel from Europe and the location of its preferred counsel.").  Thus, plaintiff's choice of forum appears legitimate and is entitled to some weight, although not as much as it would be if New York were the locus of operative facts or if plaintiff resided here.  See Penta Hardware Co., Ltd. v. Masco Corp., 09 Civ. 9341 (PKC), 2010 WL 2835555, at *3 (S.D.N.Y. July 12, 2010) (Castel, J.).  The burden remains on defendants to demonstrate that the Northern District of Illinois is a superior forum for this dispute.

    b. The Convenience And Availability Of Non-Party Witnesses

The convenience of witnesses is "typically the most important factor" on a motion to transfer.  AGCS Marine, 775 F. Supp. 2d at 647.  "When a party seeks the transfer on account of the convenience of witnesses under § 1404(a), he must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover."  Factors Etc., Inc. v. Pro Arts Inc., 579 F.2d 215, 218 (2d Cir. 1978), overruled on other grounds by Pirone v.

Macmillon, Inc., 894 F.2d 579 (2d Cir. 1990).  The Court must consider "the materiality, nature, and quality of each witness, not merely the number of witnesses in each district."  Indian Harbor Ins. Co. v. Factory Mut. Ins. Co., 419 F. Supp. 2d 395, 404 (S.D.N.Y. 2005) (citation and quotation marks omitted).  The Court considers the location of non-party witnesses, and the ability to secure their appearance for trial, as particularly important.  The convenience of party witnesses (the parties' employees) will be considered separately below in connection with the convenience of the parties.

Defendants have identified three potential non-party witnesses who are not within the subpoena power of this Court and who would be within the subpoena power of the District Court for the Northern District of Illinois.  Anthony Cacich, formerly Corporate Vice President of the One 2 One business, led the vaccine project and was one of Hospira most senior executives on the project.  (Tran Decl. ¶ 28.)  Among other things, Cacich negotiated and signed the Agreement on behalf of Hospira Worldwide, Inc. and was the person to whom notices were to be sent under the Agreement.  (Id.)  Cacich communicated and met with GSK regarding the vaccine program (id.) and, according to GSK, was the person who communicated Hospira's decision to terminate the Agreement to GSK.  (Chevallier Decl. ¶ 23.)  Rick Isaza, formerly Vice President, Engineering, at Hospira Worldwide, Inc., oversaw the engineering team that worked on the vaccine project.  (Tran Decl. ¶ 29.)   Oliver Vogt was Director, Process & Equipment Engineering, for Hospira Worldwide, Inc. during the project.  (Id. ¶ 30.)  Vogt and his team provided corporate engineering support for the filling and packaging process.  (Id.)  Among other things, Vogt was responsible for ensuring that corporate engineering resources were available to help investigate and mitigate challenges encountered on the syringe filling line used for the

vaccine project. (Id.) All three currently reside in Illinois and, to defendants' knowledge, have no connection to New York. (Id. ¶¶ 28-30.)

GSK has not identified any party or non-party witnesses located in New York. Further, GSK's Procurement Director, Laurent Chevallier, concedes that Cacich was "substantially involved" in the underlying events, although GSK disputes the materiality of Isaza and Vogt as witnesses. (Chevallier Decl. ¶ 14.)[1] GSK argues that, because defendants have not come forward with evidence that the non-party witnesses are unwilling to testify voluntarily in New York, the inability of this Court to compel their presence here is irrelevant. The Court is not persuaded. Although the non-party witnesses were once Hospira executives, they are no longer agents or employees of either defendant, and neither the reason for their departure from Hospira nor the nature of their current relationship with the defendants is apparent from the parties' submissions. The Court does not assume that the non-party witnesses' prior affiliation with Hospira carries weight with them today. Cf. Eres N.V. v. Citgo Asphalt Ref. Co., 605 F. Supp. 2d 473, 482 (S.D.N.Y. 2009) (noting subpoena power not relevant where "[t]he witnesses that have been identified are employees of the parties or counsel for the parties"). Finally, GSK notes that testimony from the non-party witnesses, assuming they were unwilling to testify in New York, could be presented through videotaped depositions taken in Illinois. But for reasons explained, in this case, live testimony before the tier of fact is preferable.

Although this case concerns a written contract, its resolution appears to depend on matters outside the Agreement's four corners. According to GSK, the parties initially contemplated production of a trivalent ("TIV") vaccine and, when defendants appeared unable to

---

[1] Although Chevallier states that he is unaware of the role played by Isaza and Vogt (Chevallier Decl. ¶ 14), there is no indication in Chevallier's declaration that he was involved in the engineering aspects of the vaccine project; Chevallier states that he was "intimately involved with the agreement" but does not indicate how. (Id. ¶ 1.)

8

produce a satisfactory TIV product, GSK attempted to accommodate them by switching to a different ("QIV") version.  (Chavellier Decl. ¶¶ 6, 22.)  GSK contends that defendants were also unable to produce an acceptable QIV product and that, in March 2012, Hospira simply "gave up" and terminated the Agreement unilaterally.  (Id. ¶¶ 7, 23.)  Specifically, Hospira contends that Cacich personally called GSK representatives to announce Hospira's termination of the Agreement.  (Id. ¶ 23.)  According to defendants, however, GSK informed Hospira (specifically, Cacich), around November 2011, that GSK was "abandoning" the TIV version in favor of the QIV version.  (Tran Decl. ¶ 17.)  Defendants also maintain that it was GSK, not Hospira, that terminated the project.  (Id. ¶ 23.)  The testimony of the non-party witnesses, and of Cacich in particular, will be important to resolving the disputed issues surrounding the transition from TIV to QIV as well as termination of the Agreement.  Live testimony is highly preferred over a video substitute in such an instance.  See Iragorri v. United Techs. Corp., 274 F.3d 65, 75 (2d Cir. 2001) (en banc) ("[L]ive testimony of key witnesses is necessary so that the trier of fact can assess the witnesses' demeanor."  (citation and quotation marks omitted)); Scottish Air Int'l, Inc. v. British Caledonian Grp., PLC, 81 F.3d 1224, 1233 (2d Cir. 1996) ("[T]he credibility of the witnesses in the present case is crucial, because plaintiffs' primary theories of recovery involve oral assurances and a conspiracy . . . ."); Allstate Life Ins. Co. v. Linter Grp. Ltd., 994 F.2d 996, 1001 (2d Cir. 1993) (noting importance of live testimony in a fraud case); TM Claims Serv. v. KLM Royal Dutch Airlines, 143 F. Supp. 2d 402, 407 n.6 (S.D.N.Y. 2001) ("Depositions . . . even when videotaped, are generally no substitute for live testimony.").  The location of the non-party witnesses therefore weighs in favor of transfer.

   c. <u>The Convenience And Relative Means Of The Parties</u>

   Transferring the action to the Northern District of Illinois will undoubtedly be more convenient for defendants, who are based in Illinois. The majority (eight) of the party witnesses identified by defendants are located in Illinois and have no known connection to New York. (Tran Decl. ¶¶ 31-39.) Among them are Steven Tran, One 2 One's Senior Manager, Peter Larsen, a Program Management Director for the One 2 One business, and Kevin Orfan, a One 2 One Vice President. (<u>Id.</u>) GSK concedes that two of Hospira's Illinois-based witnesses (Tran and Larson) were "substantially involved," although it contests the materiality of the others. (Chevallier Decl. ¶ 12.)[2]

   GSK contends that Chicago is less convenient for plaintiff, its witnesses (based in Belgium), and its inside and outside counsel (based in Pennsylvania and New York, respectively). Although the parties' submissions lend some credence to this view, the difference is not substantial. There are six non-stop flights from Brussels to New York each day, compared to only one from Brussels to Chicago, and the flying time to Chicago is about 30 minutes longer. (Hamid Decl. Ex. B.) Given that either destination will require GSK representatives to take a transatlantic flight, these incremental differences are not sufficient to outweigh the enhanced convenience to defendants of transferring the action to Illinois. Also, while the convenience of counsel is not paramount, the Court notes that it is not unusual for an international law firm such as the one representing GSK to prosecute actions throughout the country. And, as GSK points out, there are abundant direct flights between Chicago and New York each day. (Hamid Decl. Ex. B.)

---

[2] In addition to its Illinois-based witnesses, Hospira identifies five witnesses based in Kansas, one based in France, and one based in North Carolina. (Tran Decl. Ex. 2.)

Finally, all parties to the action are corporations operating in international commerce. There is no indication that any party is particularly deserving of the Court's solicitude in the transfer analysis owning to financial hardship. On balance, the convenience of the parties favors transferring the action.

      d. The Location Of Relevant Documents
    And Relative Ease Of Access To Sources Of Proof

According to defendants, most of the documents relating to GSK's claims, including emails between GSK and Hospira, Hospira's internal emails, and other internal documents related to the vaccine project, are located in Illinois. (Tran Decl. ¶¶ 43-45.) GSK does not argue that any relevant documents are located in New York. This factor therefore weighs in favor of transfer, although the weight accorded to this factor is significantly diminished by the ubiquity of electronic document storage and the resulting ease of document transfer. (Chevallier Decl. ¶ 15.) See ESPN, Inc. v. Quicksilver, Inc., 581 F. Supp. 2d 542, 548 (S.D.N.Y. 2008) ("In an era of electronic documents, easy copying and overnight shipping, this factor assumes much less importance than it did formerly.").

      e. The Forum's Familiarity With The Governing Law

The parties do not dispute that the action is governed by New York law, as provided for in the Agreement. (Tran Decl. Ex. 1 § 40.) The District Court for the Northern District of Illinois is capable of applying New York law and it does not appear that the issues of contract law presented in this case are particularly complex or novel. That said, it is also the case that this Court is frequently called upon to apply New York law and is familiar with it. For that reason, the fact that GSK's claims are governed by New York law weighs against transfer, although only slightly. See, e.g., Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.,

12 Civ. 5297 (PAE), 2013 WL 788054, at *10 (S.D.N.Y. Mar. 4, 2013) (noting forum's familiarity with New York law favors keeping the case in this District, but that the fact "merits little weight").

  f. <u>Trial Efficiency And The Interests Of Justice</u>

  Defendants urge the Court to consider the number of cases pending and the average time to trial in the two districts as relevant to its transfer ruling. The Court does not consider the proffered statistics to be particularly probative. The statistical differences between the two districts are not profound and, in any case, represent only averages that may be misleading in light of the different number of judges in the two districts, types of cases filed, and other factors.

CONCLUSION

  For the reasons stated above, defendants' motion to transfer this case to the Northern District of Illinois is GRANTED. The Court declines to reach so much of the motion as seeks dismissal of the claims. The Clerk is directed to transfer the action.

  SO ORDERED.

_____<br>
P. Kevin Castel<br>
United States District Judge

Dated: New York, New York<br>
    May 20, 2013